JENNIFER LLOYD KELLY (CSB NO. 193416)
jennifer@tyzlaw.com
RYAN TYZ (CSB NO. 234895)
ryan@tyzlaw.com
ERIN JONES (CSB No. 252947)
ejones@tyzlaw.com
SEAN APPLE (CSB NO. 305692)
sapple@tyzlaw.com
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Defendant
Supercell, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| T.T., a minor, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SUPERCELL, INC.,<br><br>    Defendant. | Case No: 4:22-cv-03196-HSG<br><br>**DEFENDANT SUPERCELL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:       October 27, 2022<br>Time:       2:00 pm<br>Judge:      Hon. Haywood S. Gilliam<br>Courtroom:  2 (4th Floor)<br><br>Complaint Filed:    June 1, 2022 |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................. 1

II.     ALLEGED FACTS .............................................................................................. 1

        A.      Supercell's Games ................................................................................... 1

        B.      Plaintiff ................................................................................................... 2

III.    THE COURT CAN CONSIDER MATERIALS REFERENCED IN THE
        COMPLAINT OR SUBJECT TO JUDICIAL NOTICE .................................... 3

IV.     ARGUMENT ....................................................................................................... 4

        A.      Plaintiff Lacks Standing to Bring His UCL Claim Because He Suffered
                No Economic Injury ................................................................................ 4

        B.      Plaintiff Lacks Standing to Seek Injunctive Relief ................................ 8

        C.      Plaintiff's UCL Claim Under the Fraudulent Prong Fails ...................... 8

        D.      Plaintiff's UCL Claim Fails Under the Unlawfulness and Unfairness
                Prongs .................................................................................................... 10

                i.       Plaintiff Fails to Plausibly Allege that California Family Code
                         Section 6701 Applies ................................................................ 10

                ii.      Plaintiff Fails to Plausibly Allege Any Violation of California
                         Family Code Section 6710 ........................................................ 12

                iii.     Plaintiff's UCL Claim Under the Unlawful Prong Fails ........... 14

                iv.      Plaintiff's UCL Claim Under the Unfairness Prong Fails ......... 15

        E.      Plaintiff's Claim for Restitution or Unjust Enrichment Fails ............... 17

V.      CONCLUSION .................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir.2007)........................................................................... 8

*Boysen v. Walgreen Co.*,
    No. C 11-06262 SI,
    2012 WL 2953069 (N.D. Cal. July 19, 2012) ................................................ 6

*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013)....................................................................... 4

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
    621 F. App'x 488 (9th Cir. 2015) ................................................................ 10

*C.M.D. v. Facebook, Inc.*,
    No. C 12-1216 RS,
    2014 WL 1266291 (N.D. Cal. Mar. 26, 2014) ............................................ 10

*C.W. v. Epic Games, Inc.*,
    No. 19-CV-03629-YGR,
    2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) ............................................. 17

*Chaset v. Fleer/Skybox Int'l, LP*,
    300 F.3d 1083 (9th Cir. 2002)....................................................................... 6

*Coffee v. Google, LLC*,
    No. 20-CV-03901-BLF,
    2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ................................................ 6

*Cullen v. Netflix, Inc.*,
    No. 5:11-CV-01199-EJD,
    2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ................................................ 7

*Deck v. Spartz, Inc.*,
    No. 2:11-CV-01123-JAM,
    2011 WL 7775067 (E.D. Cal. Sept. 27, 2011) ........................................... 13

*Dodson by Dodson v. Shrader*,
    824 S.W.2d 545 (Tenn. 1992) ..................................................................... 14

*Doe v. Epic Games, Inc.*,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020).......................................................... 8

*Drum v. San Fernando Valley Bar Ass'n*,
    182 Cal. App. 4th 247 (2010).................................................................15, 16

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012) .......................................................... 13

*Fife v. Sci. Games Corp.*,
   No. 2:18-CV-00565-RBL,
   2018 WL 6620485 (W.D. Wash. Dec. 18, 2018) ........................................................... 4

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
   No. 13-CV-05222-VC,
   2014 WL 2451290 (N.D. Cal. June 2, 2014) ................................................................. 8

*Imber-Gluck v. Google*, Inc.,
   No. 5:14-CV-01070-RMW,
   2014 WL 3600506 (N.D. Cal. July 21, 2014) ........................................................14, 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..................................................................................7, 8

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...................................................................................... 3

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ............................................................................................... 5

*Le Baron v. Berryessa Cattle Co*,
   78 Cal. App. 536 (Cal. Ct. App. 1926) ....................................................................... 13

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997). ...................................................................................... 9

*Mai v. Supercell Oy*,
   No. 5:20-cv-05573-EJD,
   2021 WL 4267487 (N.D. Cal. Sep. 20, 2021) ..........................................................5, 6

*Mason v Mach. Zone, Inc.*,
   140 F. Supp. 3d 457 (D. Md. 2015) .........................................................................6, 16

*Medina v. Safe-Guard Prod., Internat., Inc.*,
   164 Cal. App. 4th 105 (2008) ..................................................................................... 6

*Monster Energy co. v. Vital Pharm., Inc.*,
   No. EDCV 18-1882 JGB (SHKx),
   2019 WL 2619666 (C.D. Cal. May 20, 2019) ............................................................. 11

*Morrow v. Norwegian Cruise Line Ltd.*,
   262 F. Supp. 2d 474 (M.D. Pa. 2002) ........................................................................ 13

*Olsen v. Breeze, Inc.*,
   48 Cal. App. 4th 608 (1996) ....................................................................................... 9

*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018  (N.D. Cal. 2014) ........................................................................ 4

*Paster v. Putney Student Travel, Inc.*,
   No. CV 99-2062 RSWL,
   1999 WL 1074120 (C.D. Cal. June 9, 1999) .............................................................. 13

*Phillips v. Double Down Interactive LLC*,
    173 F. Supp. 3d 731 (N.D. Ill. 2016)................................................................15, 16, 17

*Reeves v. Niantic, Inc.*,
    No. 21-CV-05883-VC,
    2022 WL 1769119 (N.D. Cal. May 31, 2022) ..............................................................9

*Ristic v. Mach. Zone, Inc.*,
    No. 15-CV-8996,
    2016 WL 4987943 (N.D. Ill. Sept. 19, 2016) ............................................................16

*Sisco v. Cosgrove*,
    51 Cal. App. 4th 1302 (1996)....................................................................................11

*T.K. v. Adobe Sys. Inc.*,
    No. 17-CV-04595-LHK,
    2018 WL 1812200 (N.D. Cal. Apr. 17, 2018) .............................................................8

*Taylor v. Google LLC*,
    No. 20-CV-07956-VKD,
    2021 WL 4503459 (N.D. Cal. Oct. 1, 2021)...............................................................10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).....................................................................................7

*WhatsApp Inc. v. NSO Grp. Techs., Ltd.*,
    No. 19-CV-07123-PJH,
    2020 U.S. Dist. LEXIS 125628 (N.D. Cal. July 16, 2020)..........................................4

**STATUTES**

Cal. Fam. Code § 6700................................................................................................10

Cal. Fam. Code § 6701....................................................................................10, 11, 12

Cal. Fam. Code § 6710............................................................................................10, 12

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................8

Fed. R. Civ. P. 9(b) ...................................................................................................7, 8

Fed. R. Evid. 201 ......................................................................................................3, 4

## NOTICE OF MOTION AND MOTION

TO THE COURT AND PLAINTIFF AND HIS COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on October 27, 2022, at 2:00 pm or as soon thereafter as counsel may be heard in Courtroom 2 on the 4th floor of this Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant Supercell, Inc. will and hereby does move the Court for an order dismissing the Complaint of Plaintiff T.T. under Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.  This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities and the Request for Judicial Notice it contains, related exhibits, the Declarations of Sean K. Apple and Markku Ignatius and attached exhibits, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Supercell respectfully requests that the Court (1) grant its request for judicial notice, and (2) issue an order dismissing the Complaint for lack of standing and failure to state any claim upon which relief may be granted.

## ISSUES TO BE DECIDED

1.      Whether Plaintiff's UCL claim and claims for injunctive relief should be dismissed because Plaintiff has not plausibly alleged an economic injury or risk of harm in the future.

2.      Whether Plaintiff has failed to state a UCL claim when he has not plausibly alleged fraudulent, unfair, or unlawful conduct by Supercell.

3.      Whether Plaintiff has fails to state a claim for declaratory relief when he has not plausibly alleged any unlawful conduct.

4.      Whether Plaintiff has failed to state a claim for restitution or unjust enrichment when he cannot plead unjust receipt and retention of any benefit by Supercell.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff alleges that he bought gems—virtual items that can be consumed for in-game entertainment purposes—from Supercell.  After receiving the purchased entertainment, Plaintiff alleges that he was "dissatisfied" and wanted a refund.  Despite Supercell's public written policies that describe exceptions to non-refundability for purchases made by minors and detail how to request a refund, Plaintiff never asked Supercell for a refund.  Instead, Plaintiff hired a lawyer and filed this lawsuit.  Supercell recognizes that minors can disaffirm contracts under California law in certain circumstances.  Where possible, Supercell would be willing to refund Plaintiff's unused gems in his account that he used real money to purchase.  But because Plaintiff has not provided basic information about his identity or alleged transactions, Supercell is not currently able to give Plaintiff a refund or verify whether he is eligible for one.  Though Plaintiff has not provided enough information to determine whether this is an issue, Supercell should not be required to refund gems if he already used them to obtain entertainment.  Such a precedent would allow minors to go to an arcade or buy a movie ticket, receive the entertainment they bargained for, then demand a refund.  This would be inequitable and as such is not the law and not an available remedy.

### II.   ALLEGED FACTS

#### A.   Supercell's Games

*Brawl Stars*, *Clash of Clans*, and *Clash Royale* are Supercell's games for mobile platforms.  *See* ECF#1 ¶¶ 10, 11.  Players can download and play these games for free.  *Id*. ¶ 12 ("free to play").  Players can purchase virtual currency called "gems" for in-game use only through Apple or Google stores using real money.  *Id*. ¶¶ 4, 13.  Players can also receive gems and earn them through gameplay, without spending any money.  *See id*. ¶ 13; Ignatius Decl. ¶ 2(b); Apple Decl. ¶¶ 5, 8, 10 and Ex. 4.  Gems are one-time use consumable virtual items, meaning that once they are used, they disappear.  Ignatius Decl. ¶ 2(c); Apple Decl. ¶¶ 6, 8, 10 and Ex. 5.  Players can exchange gems for various in-game entertainment purposes, such as obtaining other in-game items or temporarily speeding up parts of the games.  *Id*.  Players are

never required to purchase or use gems to play a Supercell game. ECF#1 ¶ 13; Ignatius Decl. ¶ 2(a) and Ex. D ("Parent's Guide") at 3 ("In-app purchases are never required to play the game, but can be used to enhance certain gameplay elements."); Apple Decl. ¶¶ 5, 8, 10 and Ex. 4.

The use of Supercell's games and related services is governed by the Supercell Terms of Service. *See* Ignatius Decl. ¶ 4 and Ex. A ("Terms"). The Terms are available on Supercell's website and in Supercell's games. Ignatius Decl. ¶¶ 4–6; Apple Decl. ¶¶ 7, 9, 11 and Exs. 6–8. The Terms provide players with a limited right to access and use Supercell's games for entertainment purposes. Terms § 1.1. When a player purchases virtual items, such as gems, they purchase a limited right to use the virtual item in a Supercell game. Terms § 4.1. The Terms also generally prohibit players from any attempt to "sell, purchase, redeem or otherwise transfer Virtual Items." *Id.*

Supercell also provides a Parent's Guide to its players, available on its website and in its games. Ignatius Decl. ¶¶ 7–8; Apple Decl. ¶¶ 7, 9, 11 and Exs. 6–8. The Parent's Guide explains key features relevant to parents of children who play Supercell's games. It explains that all Supercell games are free and that there are optional in-app purchases. Parent's Guide at 3. It also explains that, as with most downloadable software entertainment products, in-app purchases are generally non-refundable. *Id.* However, for in-app purchases made by children, it states that "exceptions can be applied." *Id.* The guide details how players can request a refund. *Id.* at 3–4. For purchases on Apple devices, players are instructed to use Apple Support to request a refund. *Id.* at 3. And for purchases made on a Google device, players are instructed to email Supercell with the name of the game and a transaction ID. *Id.* at 4. The Parent's Guide also tells parents how they can manage or turn off in-app purchases for their children. *Id.* at 3.

### B.    Plaintiff

Plaintiff alleges that as a minor he "made multiple in-game purchases of Gems" in *Clash Royale*, "on his own account and using his money." ECF#1 ¶ 9. However, he does not allege that he played or made purchases in *Brawl Stars*, *Clash of Clans*, or any other Supercell game. Plaintiff admits that his "in-game purchases" had no "real value" but that he felt "dissatisfied" with them. Yet, he does not provide any detail on what he did with the gems he purchased,

whether he still has them, or whether he exchanged them for in-game items, used them to speed up game play, or for some other entertainment purpose in the game. *See id.* ¶¶ 31, 36. Plaintiff does not allege that he read Supercell's Terms of Service or Parent's Guide before making any of those purchases. *See* ECF#1 ¶¶ 33 (defendant read Supercell's Terms of Service only after retaining counsel). Plaintiff states that he no longer plays Clash Royale and will not play it again in future. *Id.* ¶ 9.

Plaintiff does not allege that he made any refund request relating to his in-game purchases, such as contacting Supercell and providing any of the information that would be needed to process a refund, for example, an identification of what game he made the purchase in and the transaction ID. Rather, Plaintiff decided to file a lawsuit without requesting a refund after allegedly reviewing Supercell's Terms with his parent and counsel. ECF#1 ¶ 33. Currently it is impossible for Supercell to give Plaintiff a refund (or determine whether he is eligible for one) because he has not provided Supercell with a meaningful request containing the information needed to process a refund, such as what game he made the purchase in and the transaction ID. *See* Ignatius Decl. ¶ 3.

## III.   THE COURT CAN CONSIDER MATERIALS REFERENCED IN THE COMPLAINT OR SUBJECT TO JUDICIAL NOTICE

On a motion to dismiss, the Court may consider materials that Plaintiff referenced or incorporated by reference in the Complaint, and materials that are judicially noticeable. *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018). Thus, on this motion the Court may consider Supercell's games, public online documents and guides included, referenced, or linked to in the games, and other documents and information that is "generally known" or "can be accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)).

First, the Court may consider Supercell's games (and screenshots from the games and corresponding store pages) because Plaintiff's Complaint refers to them "extensively" and they form "the basis of the plaintiff's claim." *See Khoja*, 899 F.3d at 1002, 1004–05 (finding documents "incorporated by reference" under these conditions); *see* Apple Decl. Ex. 1 (games),

Exs. 2–3 (store page for games), Exs. 4–8 (screenshots from games).  The Complaint describes the games at length, and they form the basis of Plaintiff's claims.  ECF#1 ¶¶ 11–13.  Courts in the Ninth Circuit routinely consider the full contents of video games on motions to dismiss under these circumstances.  *See, e.g.*, *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 n.7 (9th Cir. 2013) (concluding that the district court "properly considered" relevant versions of *Madden NFL* on motion to dismiss); *Fife v. Sci. Games Corp.*, No. 2:18-CV-00565-RBL, 2018 WL 6620485, at *2 (W.D. Wash. Dec. 18, 2018) (considering defendant's mobile game and gameplay screenshots on motion to dismiss).

Second, the Court may also consider Supercell's "Terms of Service" and "Parent's Guide."  *See* Ignatius Decl. Exs. A–E.  These materials are linked-to from inside the games, and as such are incorporated into the Complaint with the games themselves.  *See* Apple Decl. ¶¶ 7, 10, 8 and Exs. 6–8.  The Complaint extensively references the Terms of Service, and Plaintiff's claims are based on alleged statements made in this document—even though he never reviewed them until after contacting counsel.  ECF#1 ¶¶ 20–28, 32–33, 47–48, 63, 65, 75; *see Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1065 n.24 (N.D. Cal. 2014) (taking notice of agreement governing transaction at heart of complaint).  In addition, Supercell's Terms of Service and Parent's Guide may be considered because they are publicly published online and their authenticity cannot reasonably be questioned.  *See* Ignatius Decl. ¶¶ 4–8; Fed. R. Evid. 201(b)(2); *WhatsApp Inc. v. NSO Grp. Techs., Ltd.*, No. 19-CV-07123-PJH, 2020 U.S. Dist. LEXIS 125628, at *33 n.4 (N.D. Cal. July 16, 2020) (judicially noticing online terms of service because factual information from the internet may be noticed as long as the facts are not subject to reasonable dispute).

## IV.    ARGUMENT

### A.    Plaintiff Lacks Standing to Bring His UCL Claim Because He Suffered No Economic Injury

Plaintiff's UCL claim should be dismissed because his purchases did not cause him any economic injury, and thus he lacks standing to bring suit individually and as a class representative. A UCL claim requires a class action plaintiff to show "a loss or deprivation of money or property

sufficient to qualify as injury in fact, *i.e.*, economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Plaintiff's generic allegation that he "lost money" is a conclusory statement unsupported by factual allegations. *See* ECF#1 ¶ 71. Although Plaintiff alleges that he "spent money on in-game purchases of Gems," he does not specify whether his UCL claim is based on those purchases alone, or whether he also means to complain about transactions in which he exchanged gems for in-game items. *See* ECF#1 ¶ 31. Based on the facts Plaintiff does allege, it is not plausible that Plaintiff has suffered economic injury.

First, Plaintiff lacks standing to bring a claim against *Brawl Stars* or *Clash of Clans* because he does not allege ever playing those games. *See* ECF#1 ¶ 9. Rather, Plaintiff only alleges that he made purchases in *Clash Royale* that he "regrets." *Id.* ¶¶ 9, 31. Because Plaintiff does not allege that he ever played *Brawl Stars* or *Clash of Clans*, he cannot have been injured by any alleged purchases in those games. *See Mai v. Supercell Oy*, No. 5:20-cv-05573-EJD, 2021 WL 4267487, at *3 (N.D. Cal. Sep. 20, 2021) (dismissing UCL claim based on *Brawl Stars* because Plaintiff did not allege any experience with that game). Accordingly, all claims must be dismissed as *Brawl Stars* and *Clash of Clans*.

Second, it is not plausible that Plaintiff was injured by not getting a refund. As discussed above, Plaintiff does not allege that he ever requested a refund, despite Supercell's public policies with instructions for how to do so. *See* Ignatius Decl., Ex. D ("Parent's Guide") at 3. Supercell cannot issue a refund without Plaintiff making a request and providing details about his transactions, so any such injury is of Plaintiff's own making and is not attributable to Supercell. *See id.* ¶ 3.

Third, it is not plausible that Plaintiff was injured by entering into a void contract. Plaintiff only cites California Family Code Section 6701(c) to allege that the contracts were void when he entered them. *See* ECF#1 ¶ 61. But as discussed below, this theory is not plausible because gems are not "personal property," are intangible, and were in his "immediate possession or control." *See infra*, Section IV.D.i.

Fourth, to the extent that Plaintiff alleges that buying gems with money is an economic injury, this is also implausible. He does not claim the gems failed to work for their intended

1    purpose (to exchange for in game items or speed up gameplay, etc.) or were worth objectively

2    less than could reasonably be expected.  *See Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012

3    WL 2953069, at *6–7 (N.D. Cal. July 19, 2012) (dismissing claims because failure to provide

4    such allegations showed that plaintiff did not lose money or property in the transaction).  Courts

5    have dismissed similar California UCL claims on this basis, including for the purchase of gems

6    in Supercell's *Clash Royale*.  *See Mai*, 2021 WL 4267487, at *3 (N.D. Cal. Sep. 20, 2021)

7    (dismissing UCL claim because Plaintiff "received exactly what he paid real-world currency for:

8    gems to use as he pleased in Clash Royale."); *see also Coffee v. Google, LLC*, No. 20-CV-03901-

9    BLF, 2021 WL 493387, at *9 (N.D. Cal. Feb. 10, 2021) (dismissing UCL claim brought by a

10    minor who spent $100 on in-game purchases, holding that he did not suffer an economic injury);

11    *Mason v Mach. Zone, Inc*., 140 F. Supp. 3d 457, 461–64 (D. Md. 2015) (purchase of virtual

12    currency for use in an in-game "Casino" did not confer standing to bring a UCL claim).

13         Fifth, Plaintiff fails to show UCL standing to the extent that he alleges economic injury

14    by later exchanging gems for other virtual items.  *See* ECF#1 ¶ 4, 9, 31.  Courts have held that

15    loss of virtual currency does not constitute economic loss because the loss, if any, was complete

16    when real-world currency was exchanged for a license to use virtual currency for entertainment

17    purposes in a game.  *Mason*, 140 F. Supp. 3d at 465.  This is because "the underlying transaction"

18    of buying virtual currency to use "for entertainment purposes" in a game "is more akin to

19    purchasing cinema or amusement park tickets." *Id.*  This is true for exchanging virtual currency

20    for virtual items in Supercell's *Clash Royale*.  *See Mai*, 2021 WL 4267487, at *3 (holding that

21    use of in-game currency in *Clash Royale* "is not an economic injury within the meaning of the

22    UCL").

23         Sixth, Plaintiff's alleged subjective disappointment is not an economic injury.  *See* ECF#1

24    ¶ 31 ("Plaintiff regrets these purchases").  The requirement that Plaintiff allege an economic

25    injury by losing money or property cannot be based on "the subjective *motivation* of the plaintiff."

26    *See Medina v. Safe-Guard Prod., Internat., Inc.*, 164 Cal. App. 4th 105, 115 n.11 (2008).  The

27    Ninth Circuit has also concluded that subjective disappointment does not amount to economic

28    injury.  In *Chaset v. Fleer/Skybox Int'l, LP*,  plaintiffs asserted that the marketing and distribution

of trading card packs constituted illegal gambling based on their subjective disappointment that certain card packs did not have cards of the desired rarity or potential resale value they wanted. 300 F.3d 1083, 1086 (9th Cir. 2002). The Ninth Circuit affirmed dismissal of the plaintiffs' claims for lack of standing, holding that "disappointment upon not finding an insert card in the package is not an injury to property." *Id.* at 1087. Here, Plaintiff admits that virtual items have no "real value" and are merely for subjective "entertainment," and only that he was "dissatisfied." *See* ECF#1 ¶¶ 31, 48. As a result, Plaintiff fails to plead a plausible economic injury.

Seventh, even if Plaintiff had identified any economic injury, which he did not, he still cannot establish standing because he does not plausibly allege "actual reliance" on Supercell practices or statements or that they were an "immediate cause" of his injury. *See Cullen v. Netflix, Inc.*, No. 5:11-CV-01199-EJD, 2013 WL 140103, at *4–5 (N.D. Cal. Jan. 10, 2013), *aff'd*, 600 F. App'x 508 (9th Cir. 2015). Plaintiff does not claim he read or relied on any misrepresentation by Supercell before purchasing gems. *See* ECF#1. Plaintiff's allegations here are conclusory: that Supercell did not tell him he had "an unrestricted right to refund any purchases," that he "relied on Defendant's omission," and that as a result, he was unaware that that he could disaffirm his contract. ECF #1 ¶¶ 77, 79. But this does not give rise to any plausible injury. Plaintiff does not allege that he read Supercell's Terms of Service before making purchases, and indeed, he only alleges that he read it after his purchases with his parent and attorneys. ECF #1 ¶ 33. It is not plausible that Plaintiff would rely on Supercell's statements or omissions over the advice of his counsel and parent. And even if Plaintiff did rely on an omission prior to his purchase, there would be no plausible harm. It also makes no sense. A belief that a refund is not available could not plausibly induce a person to make a purchase—if anything, a belief that something is non-refundable would generally make someone *less* likely to make a purchase. Plaintiff's allegation also lacks basic detail and specificity, and thus fails to meet the heightened pleading standard of Rule 9(b), which required that he plead "'the who, what, when, where, and how' of the misconduct charged." *See Vess v. Ciba-Geig Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) (citation omitted); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009) (applying Rule 9(b) to UCL claims based on fraud).

1    For these reasons, Plaintiff lacks standing to bring a UCL claim.

2        **B.      Plaintiff Lacks Standing to Seek Injunctive Relief**

3        A plaintiff seeking injunctive relief must allege not only a concrete and particularized

4    legal harm, but also that there is a sufficient likelihood that he will be wronged again in a similar

5    way.  *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5

6    (N.D. Cal. June 2, 2014) (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th

7    Cir.2007)).   In a putative class action, the named plaintiff must show that he is subject to a

8    likelihood of future injury and cannot rely on alleged future harm to unnamed class members.

9    *T.K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *14 (N.D. Cal. Apr. 17,

10   2018).  The court in *T.K.* dismissed injunctive relief claims for lack of Article III standing because

11   the plaintiff disaffirmed her contract with Adobe and there was nothing to suggest that she would

12   use Adobe products again.   *Id.* at *14.   The same is true here—Plaintiff has disaffirmed his

13   contracts and alleges that he "no longer plays the Games and will not play the Games in the

14   future." ECF#1 ¶ 9.  For this reason, Plaintiff does not have standing for the injunctive relief that

15   he requests, and his claims should be dismissed with prejudice.  *See id.* ¶¶ 51, 84.

16       **C.      Plaintiff's UCL Claim Under the Fraudulent Prong Fails**

17       The Court should dismiss Plaintiff's UCL claim based on fraud because he fails to

18   adequately identify any actionable misrepresentations or omissions, intent to deceive, or reliance

19   by him.  Plaintiff's claim fails the plausibility standard of Rule 12(b)(6), and certainly fails the

20   heightened pleading standard under Rule 9(b).  *See* Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor*

21   *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b)'s heightened pleading standards apply to

22   claims for violations of the UCL.").

23       As discussed above, Plaintiff's allegations of reliance are conclusory and implausible.  *See*

24   *supra*, Section IV.C  (Plaintiff does not allege he read Supercell's Terms of Service before making

25   purchases, so could not have relied on it).   As a result, Plaintiff's UCL claim based on fraud

26   should be dismissed for failing to plausibly allege reliance.  *See Doe v. Epic Games, Inc.*, 435 F.

27   Supp. 3d 1024, 1046–47 (N.D. Cal. 2020) ("[W]hile plaintiff alleges that a disclaimer stating that

28   purchases are 'not eligible for refund' appears 'in very small inconspicuous text,' plaintiff does

not allege whether he saw this disclosure, and if he did, how he was misled by it."); *Reeves v. Niantic, Inc.*, No. 21-CV-05883-VC, 2022 WL 1769119, at *1 (N.D. Cal. May 31, 2022) (dismissing UCL claim because plaintiff was not aware of non-refundability policy until after he made in-app purchases).

Further, Plaintiff fails to allege any actionable misrepresentation. Plaintiff alleges that Supercell's non-refundability statement in its Terms of Service is fraudulent because it does not state that minors can get refunds without restriction. *See* ECF#1 ¶ 75. The statement in Supercell's Terms is not fraud. First, this non-refundability clause is a term of an agreement, not a factual statement. Minors who do not disaffirm Supercell's Terms continue to agree that virtual items are non-refundable, and not every minor who plays Supercell's games *wants* to disaffirm the Terms, which would result in them losing access to their account. Second, Plaintiff ignores Supercell's actual policy, which explicitly states that "exceptions can be applied" to non-refundability for children who make in-app purchases and tells users how to seek refunds. Parent's Guide at 3.

Plaintiff's allegation that Supercell "omitted" telling minors they can disaffirm a contract is also not fraud. See ECF#1 ¶ 75. Under California law, there are four circumstances in which an omission constitutes actionable fraud:

> **(1)** when the defendant is in a fiduciary relationship with the plaintiff; **(2)** when the defendant had exclusive knowledge of material facts not known to the plaintiff; **(3)** when the defendant actively conceals a material fact from the plaintiff; and **(4)** when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). None of these circumstances are present here: Supercell was not in a fiduciary relationship with Plaintiff, does not have exclusive knowledge of a public law, and did not conceal any material fact. Plaintiff's legal conclusion that Supercell owed a duty to tell minors that they have a right to disaffirm or get a refund, ECF#1 ¶ 77, is unsupported. To the contrary, there is no general duty under California law requiring Supercell to notify players of their legal rights. *See Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 620 (1996) ("[D]efendants are under no duty to outline in their releases the details of their customers' legal rights."). Thus, there is no actionable omission.

**D.    Plaintiff's UCL Claim Fails Under the Unlawfulness and Unfairness Prongs**

Plaintiff alleges that Supercell enters contracts with minors that are void under California Family Code section 6701 and violates the right of minors to disaffirm contracts under California Family Code section 6710.  ECF#1 ¶¶ 46–87.  These allegations are the basis of Plaintiff's first and second claim for declaratory relief and his third UCL claim under the unlawfulness prong. Similar allegations underlie his UCL claim under the unfairness prong.  *Id.*  Plaintiff's allegations are not plausible, so his claims based on them fail.

   i.    Plaintiff Fails to Plausibly Allege that California Family Code Section 6701 Applies

Plaintiff's claim that his purchase of gems is void under California Family Code Section 6701(c), is not plausible.  ECF#1 ¶¶ 60–64.  Section 6701(c) provides that a contract relating to personal property not in a minor's immediate possession or control is void.  But Section 6701(c) is an exception to the general rule that "a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance," and "must be construed narrowly."  Cal. Fam. Code § 6700; *C.M.D. v. Facebook, Inc.*, No. C 12-1216 RS, 2014 WL 1266291, at *3 (N.D. Cal. Mar. 26, 2014) ("*C.M.D. I*"), *aff'd*, 621 F. App'x 488 (9th Cir. 2015) ("*C.M.D. II*") As detailed below, California Family Code Section 6701 does not apply to Plaintiff's alleged purchases.

First, the alleged purchases are not contracts relating to "personal property."  When a player purchases virtual items, such as gems, they are purchasing a right to use—not own—the virtual items for entertainment purposes, in-game only.  *See* ECF#1 ¶ 48 ("entertainment service of the in-game purchases"); Terms §§ 1.1 (Supercell provides access to its games for "entertainment purposes"), 4.1 (players may purchase a "right to use" virtual items).  Such contractual rights do not constitute personal property.  *See Taylor v. Google LLC*, No. 20-CV-07956-VKD, 2021 WL 4503459, at *6 (N.D. Cal. Oct. 1, 2021)  (holding that plaintiffs did not have a property interest in purchased cellular data allowances because they were merely "a right to obtain services conferred by their contracts with the service providers" and "the benefits of contractual rights are not personal property capable of conversion") (quoting *Monster Energy co. v. Vital Pharm., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 2619666, at *13 (C.D. Cal.

May 20, 2019) ).  This is no different than purchasing a right to see a movie in a theater—such an agreement relates to the right of the purchaser to view the movie, not property rights in the movie itself.  Just like movie tickets, gems in Supercell's games are consumable items that merely allow a player to obtain entertainment in Supercell's games.  *See* Ignatius Decl. ¶ 2(c); Apple Decl. ¶¶ 6, 8, 10 and Ex. 5.  Thus, California Family Code Section 6701 does not apply to Plaintiff's alleged purchases.

Second, California Family Code Section 6701(c) does not apply because this section relates only to tangible property.  *C.M.D. v. Facebook* rejected the argument that a contract involving intangible rights was void pursuant to Section 6701(c).  There, the plaintiffs claimed that Section 6701(c) voided their agreement to the Facebook terms of use, arguing that a provision granting Facebook the right to use plaintiffs' names and likenesses in advertisements constituted property.  *C.M.D. I*, 2014 WL 1266291, at *1.  The court dismissed the claim, holding that "property" in Section 6701(c) is "directed at tangible property" and "only renders void certain contracts relating to such property."  *Id.* at *4.  The Ninth Circuit affirmed dismissal, explaining that "Section 6701(c) of the Family Code is meant to prevent minors from contracting away future rights" in such property.  *C.M.D. II*, 621 F. App'x at 489 (citing *Sisco v. Cosgrove*, 51 Cal. App. 4th 1302, 1307 (1996)).  Virtual items are intangible and are provided immediately upon purchase, so to the extent that they could be considered property, they would be present and intangible personal property, and as such do not fall under Section 6701(c).[1]  Although Plaintiff asserts that California's Tax Code treats intangible property as personal property, the treatment of property for tax purposes has no bearing on the interpretation of "personal property" in a completely unrelated statute in the Family Code.  Thus, California Family Code Section 6701 does not apply to Plaintiff's alleged purchases even if gems were considered property.

Third, Plaintiff does not plausibly allege that the gems he purchased were not in his

---

[1] Plaintiff also alleges that "[g]ems can be purchased from Defendant in the form of tangible gift cards or intangible codes"—which does not make sense.  ECF#1 ¶ 59.  Plaintiff does not explain how virtual gems for use in a video game can take "the form of" a gift card or a code, or how that would render the gems tangible personal property.  This allegation is nonsensical and therefore implausible.

1
2
3
4
5
6
7

"immediate possession or control." Plaintiff points to a section of Supercell's Terms stating that "Supercell may manage, regulate, control, modify or eliminate Virtual Items at any time, with or without notice." ECF#1 ¶ 23; Terms § 4.1. But just because Supercell "may" exercise a right to control virtual items in its games does not mean that it did, or that Plaintiff did not have *possession* of the gems. Plaintiff does not allege that the gems were not in his possession after his purchase. Nor does Plaintiff allege that he was unable to control the gems by choosing whether or how to use them in the game.

8

Thus, California Family Code Section 6701 does not apply.

9
10

ii.   Plaintiff Fails to Plausibly Allege Any Violation of California Family Code Section 6710

11
12
13
14
15
16
17
18
19

Plaintiff's allegations that Supercell violated Section 6710 are also implausible. As a general matter, it is undeniable that minors have certain rights to disaffirm contracts. Although Plaintiff states that he "disaffirms his entire contract with Defendant" by filing the Complaint, the full scope of what exactly Plaintiff is attempting to disaffirm is still unclear. ECF#1 ¶ 1. Plaintiff points to various transactions that he may be attempting to disaffirm: Supercell's Terms, transactions involving gems he may have exchanged for entertainment, or in-game purchases of gems using real money. By conflating these possibilities into a vague claim that he disaffirms his "entire contract," Plaintiff obscures that different considerations apply to each scenario, and that he does not necessarily have the same rights of disaffirmation with regard to each transaction.

20
21
22
23
24
25
26

To the extent Plaintiff seeks to disaffirm his acceptance of Supercell's Terms of Service, or his purchases of gems that he has not used for in-game purchases, it is not clear that Plaintiff's claims are ripe or that there is an actual dispute here appropriate for adjudication. Supercell accepts Plaintiff's disaffirmance of Supercell's Terms under Section 6710.[2] There is therefore no dispute with respect to this contract. However, the Terms only generally govern the relationship between Supercell and its players but does not constitute a purchase agreement. To the extent that Plaintiff is attempting to disaffirm purchase contracts under which he exchanged

27
28

---

[2] Assuming, of course, that Plaintiff truthfully alleged that he is a minor.

real money for gems, Supercell also accepts Plaintiff's disaffirmance. Where possible, Supercell would be willing to refund Plaintiff's unused gems in his account that he used real money to purchase. Supercell's policy allowing exceptions to non-refundability for purchases by minors makes this clear. Parent's Guide at 3. Supercell is unable to do so, however, because Plaintiff did not follow Supercell's policy for requesting a refund, which involves providing a transaction ID and other information needed for Supercell to issue a refund. *See* Parent's Guide at 3–4; Ignatius Decl. ¶ 3.

To the extent Plaintiff seeks to disaffirm his purchases of gems whose entertainment value he has already consumed by exchanging them in the games for in-game items to play with, his claim fails under the law.[3] Under California law, the effect of disaffirmation by a minor is largely the same as rescission and is a question of equity. *See Deck v. Spartz, Inc.*, No. 2:11-CV-01123-JAM, 2011 WL 7775067, at *6 (E.D. Cal. Sept. 27, 2011) (quoting *Le Baron v. Berryessa Cattle Co.*, 78 Cal. App. 536, 548 (Cal. Ct. App. 1926)). As such, the disability of infancy is a shield, not a sword that can be "used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit." *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012). Recognizing that disaffirmation is an equitable remedy under California law, Courts have rejected claims from minors attempting to disaffirm consumable purchases after consuming them and enjoying the benefits. S*ee, e.g.*, *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999) (rejecting plaintiff's attempt to disaffirm a contract as inequitable because she took a four-week trip provided for under the contract); *Morrow v. Norwegian Cruise Line Ltd.*, 262 F. Supp. 2d 474, 476 (M.D. Pa. 2002) (rejecting plaintiff's attempt to disaffirm a contract for a voyage on a cruise ship as inequitable because she went on the cruise and was unable to give it back or otherwise disgorge the benefit). Gems in Supercell's are not goods or persistent software—they are consumable items meant to allow player's access to fleeting entertainment. *See* Ignatius Decl. ¶ 2(c); Apple Decl. ¶¶ 6, 8, 10

---

[3] As stated above, Supercell does not know whether this is an issue in this case because Plaintiff has not provided sufficient information to allow Supercell to determine eligibility for or issue a refund. *See supra* Section II.B; Ignatius Decl. ¶ 3.

and Ex. 5.  A player who uses gems to receive the benefit of entertainment cannot return or otherwise disgorge this benefit, and it is inequitable to use up consumable gems to receive the benefit and demand a refund.

Courts have long recognized the tension between honoring a minor's right to disaffirm while not allowing minors to use that right inequitably to engage in free-riding behaviors. Allowing allow minors to obtain refunds on consumed entertainment is thus both fundamentally inequitable and bad policy, especially when the purchases at issue here concern one of children's most common expenditures, personal entertainment.  Allowing such refunds as a matter of course would permit a teenager to watch a movie in a theater and seek a refund years later, or play games of pinball in an arcade over the course of years only to demand his money back long after the games ended.  As one Court put it:

> [I]t does not appear consistent with practice of proper moral influence upon young people, tend to encourage honesty and integrity, or lead them to a good and useful business future, if they are taught that they can make purchases with their own money, for their own benefit, and after paying for them, and using them until they are worn out and destroyed, go back and compel the vendor to return to them what they have paid upon the purchase price.  Such a doctrine can only lead to the corruption of principles and encourage young people in habits of trickery and dishonesty.

*Dodson by Dodson v. Shrader*, 824 S.W.2d 545, 550 (Tenn. 1992).

Thus, even if a minor disaffirms a contract and receives a refund for unused consumable items, they are not entitled to an inequitable refund for consumed entertainment.  To the extent Plaintiff's claim is based on consumed gems, it must fail.

### iii.   Plaintiff's UCL Claim Under the Unlawful Prong Fails

Plaintiff's UCL claims under the unlawfulness prong is premised on his allegations that Supercell violated the Family Code by denying him a refund.  *See* ECF#1 ¶ 72.  As discussed above, he has failed to allege a plausible violation of both cited sections of the Family Code.  *See supra* Sections IV.D.i–ii.  His UCL "unlawful" claim therefore fails.  *See Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *5 (N.D. Cal. July 21, 2014) (dismissing UCL claim because of the dismissal of the underlying causes of action).

1

            iv.    Plaintiff's UCL Claim Under the Unfairness Prong Fails

2          Plaintiff's UCL claim based on the unfairness prong hinges on his allegation that that

3   Supercell promotes its games as free to induce minors to purchase in-game items and deny

4   refunds. ECF#1 ¶ 74.  Plaintiff fails to state a claim that Supercell engaged in "unfair" business

5   practices because these allegations are conclusory and fail all four tests that California courts use

6   to gauge such UCL claims.  *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247,

7   256–57 (2010) (affirming dismissal).

8          First, Plaintiff's conclusory allegation that Supercell unfairly "den[ies] minors any refunds

9   they seek" is not supported by factual allegations because he fails to allege that he sought a refund,

10  much less that Supercell ever denied him one.  Supercell's policies allow for "exceptions" to

11  non-refundability for children who make in-app purchases, showing that Plaintiff's claim is pure

12  speculation based on an incomplete and selective reading of Supercell's policies.  Parent's Guide

13  at 3.  Any injury that Plaintiff suffered resulted from his own decision not to request a refund for

14  purchases he wished to disaffirm.  Thus, the alleged injury is one that Plaintiff "could reasonably

15  have avoided" by requesting the relief he wanted and asserting the basis for that relief, leaving

16  him without a claim under the UCL's unfair prong.  *See Imber-Gluck v. Google, Inc.*, No. 5:14-

17  CV-01070-RMW, 2014 WL 3600506, at *6 (N.D. Cal. July 21, 2014) (citation omitted); *see also

18  In re Firearm Cases*, 126 Cal. App. 4th 959, 981 (2005) ("[T]he challenged practice must be the

19  likely cause of substantial injury.").

20         Second, Plaintiff fails to state a claim under the "tethering" test because he has alleged no

21  violation of a public policy "tethered" to specific constitutional, statutory, or regulatory

22  provisions.  *See Drum*, 182 Cal. App. 4th at 256–57 (2010).  Plaintiff bases his UCL claim on

23  predicate violations of California laws allowing a minor to disaffirm contracts. *See* ECF#1 ¶ 73.

24  But as explained above, Plaintiff has not alleged that he sought a refund or was denied one, so he

25  has failed to state a claim under these statutes and his UCL claim based on them fails as well.

26         Third, Plaintiff has also failed to state a claim under the "balancing" test because he has

27  not plausibly alleged that any Supercell practices are "immoral, unethical, oppressive,

28  unscrupulous or substantially injurious to consumers" and whose utility weighs unfavorably

against the harm to customers.  *See Drum*, 182 Cal. App. 4th at 256; *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (rejecting argument that virtual casino constituted "immoral, . . . unethical, oppressive, [and] unscrupulous conduct" under Illinois Consumer Fraud Act); *Ristic v. Mach. Zone, Inc.*, No. 15-CV-8996, 2016 WL 4987943, at *4 (N.D. Ill. Sept. 19, 2016) (same).  Plaintiff specifically claims that Supercell acted unfairly by promoting its games as "free" to induce minors to purchase in-game virtual items and denying minors refunds.  ECF#1 ¶ 74.  This does not plausibly show a violation of the UCL under the balancing test.  There is nothing unfair about promoting the games as free because, as Plaintiff concedes, Supercell's games are indeed free.  ECF#1 ¶ 12 ("Supercell instead offers the Games for free . . . .").  And while Plaintiff speculates that Supercell promotes its game as free with the "intent to induce minors" to make purchases, Plaintiff does not allege that he was induced to make any purchases based on Supercell's alleged promotion of the game as free.  *See id.* ¶¶ 29–36 (describing Plaintiff's alleged experiences and merely alleging that Plaintiff "made multiple in-game purchases" without inducement).  And, as discussed above, Plaintiff does not allege that he was ever denied a refund.  For these reasons, his allegations lack plausibility and non-speculative support, and fail to state a claim, especially when balanced against Supercell's lawful business practices.  *See Mason*, 140 F. Supp. 3d at 469; *Phillips*, 173 F. Supp. 3d at 743.

Fourth, Plaintiff also fails to state a claim under the "FTC" test because he does not plausibly allege that he sustained a substantial injury, that his injury outweighs countervailing benefits to consumers or competition, and that he could not reasonably avoid that injury.  *See Drum*, 182 Cal. App. 4th at 257.  Plaintiff's claim fails under all three prongs of this test.  He does not allege that he personally suffered "substantial" harm by playing Supercell's games, merely that he "felt dissatisfied" with the entertainment value of his purchases.  ECF#1 ¶ 36.  Nor does he acknowledge any of the extensive benefits to consumers and competition of having games like Supercell's freely available before summarily concluding that his alleged harm outweighs those benefits.  *See* ECF#1 ¶ 74.  And Plaintiff also does not allege that he could not have reasonably avoided his purchases.  Nor can he, given that consumers have alternate forms of entertainment available and engage in gameplaying voluntarily.  *Cf. Phillips*, 173 F. Supp. 3d at 743 (under

Illinois Consumer Fraud Act, plaintiff could have avoided cost of game by choosing other entertainment or waiting for free allotment chips).  A player's choice to buy gems and then exchange them for a Supercell virtual item is doubly voluntary, as players do not need to purchase anything with real money to play the games.  ECF#1 ¶ 12.  Under such conditions, Plaintiff cannot claim the games are unfair.  *See Phillips*, 173 F. Supp. 3d at 743.

      **E.**    **Plaintiff's Claim for Restitution or Unjust Enrichment Fails**

Plaintiff's claim for restitution or unjust enrichment should also be dismissed because this claim is fundamentally a quasi-contract claim and Plaintiff has not asserted any claim based on contract.  *See C.W. v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 5257572, at *6 (N.D. Cal. Sept. 3, 2020).

**V.**    **CONCLUSION**

For the foregoing reasons, the Court should grant the Motion and dismiss Plaintiff's Complaint.

Respectfully submitted,
TYZ LAW GROUP PC

Dated: August 26, 2022

*/s/ Sean Apple*
Sean Apple

Attorneys for Defendant
Supercell, Inc.