UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.T.,<br><br>            Plaintiff,<br><br>   v.<br><br>SUPERCELL, INC.,<br><br>            Defendant. | Case No. 22-cv-03196-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

Pending before the Court is Defendant Supercell, Inc's motion to dismiss. Dkt. No. 27. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I. BACKGROUND

In this putative class action, T.T., a minor, alleges that Defendant has engaged in deceptive and misleading marketing for in-game items and in-game currency for its video games *Clash of Clans*, *Clash Royale*, and *Brawl Stars*. *See* Dkt. No. 1 ("Compl.") at ¶ 2. Although the games are free to play, Plaintiff alleges that they "are monetized through a system where players can obtain new upgrades, characters, chests, weapons, costumes, and other resources in exchange for virtual currency," referred to as "Gems." *See id.* at ¶¶ 4, 13. "The in-game currency can be purchased from Defendant using real money." *Id.*

Plaintiff alleges that he has "made multiple in-game purchases of Gems in the Games, using his money" and "on his own account." *See id.* at ¶¶ 9, 30. He asserts that "[d]espite spending money on in-game purchases, Plaintiff did not receive any items that had real value." *Id.* at ¶ 31. He further alleges that he "no longer plays the Games and has no desire to resume

playing the Games," and "regrets these purchases and wishes to obtain a full refund." *Id.* Plaintiff contends that he is entitled to such a refund because his contract with Defendant is "voidable" under California law because a minor has "the right to disaffirm contracts," or alternatively, his contract is "void" under California law because a minor cannot enter into a contract "relating to any personal property not in the immediate possession or control of the minor." *Id.* at ¶¶ 19–20, 49–50, 52, 60–61, 64. Plaintiff further contends that Defendant's Terms of Service state that all purchases are final and non-refundable, and does not contain an exception for minors as required by California law. *See id.* at ¶¶ 21–22, 28–29, 32–33. Plaintiff suggests that he was misled by the language in the Terms of Service into believing that he was not entitled to a refund of his purchases. *See, e.g.*, *id.* at ¶¶ 19, 21–22, 79–81, 91.

Based on these allegations, Plaintiff brings causes of action for "Declaratory Judgment on Minor's Right to Disaffirm," "Declaratory Judgment on Minor's Inability to Contract for Personal Property Not in Their Immediate Possession or Control," "Violation of the California Business & Professional Code § 17200," and "Restitution or Unjust Enrichment." *See id.* at ¶¶ 46–93.

Defendant now moves to dismiss the complaint in its entirety.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

2

the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### III.  DISCUSSION

#### A.  Standing

As an initial matter, Defendant argues that Plaintiff lacks standing to bring his claims. *See* Dkt. No. 17 at 4–7.

##### i.  Unplayed Games

Defendant contends that Plaintiff cannot pursue claims as to *Clash of Clans* or *Brawl Stars* because he does not allege that he played or made in-game purchases in either game. *See* Dkt. No. 27 at 5. In the complaint, Plaintiff only states that he "made multiple in-game purchases in *Clash Royale*." Compl. at ¶ 9.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Although some district courts reserve the issue until a motion for class certification, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; *see also Papasan v. Dometic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal

3

2017); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *12–13 (N.D. Cal. Oct. 2, 2013). If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). However, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

Courts have found substantial similarity for purposes of standing where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *4–8 (N.D. Cal. Mar. 13, 2014). The Court agrees with Judge Orrick of this district that "the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products." *Id.* at *8. "That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*

Here, Plaintiff asserts that the nature of in-game purchases are the same across the three games. *See* Compl. at ¶¶ 3–4, 11–13, 24. These purchases are used for "new upgrades, characters, chests, weapons, costumes, and other resources . . . ." *Id.* at ¶ 4. Plaintiff also contends—and Defendant appears to agree—that the Terms of Service apply to all three games. *See id.* at ¶¶ 20–23, 25–26; Dkt. No. 27 at 2 ("The use of Supercell's games and related services is governed by the Supercell Terms of Service."). Plaintiff challenges these Terms of Service, which do not contain notice of or a mechanism for minors to receive refunds for their purchases. The Court finds that this is sufficient at this stage and **DENIES** the motion on this basis.

        **ii.**    **Economic Injury**

Defendant next argues that Plaintiff has not established that he suffered an economic injury as required to have standing under California's Unfair Competition Law ("UCL"). *See* Dkt. No. 17 at 4–7. To possess statutory standing under the UCL, "a plaintiff [must] have lost money or property." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (Cal. 2011) (quotation omitted).

4

Plaintiff responds that his economic injury "stems from Defendant's unlawful retention of monies he is entitled to in light of the fact that his purchases from Defendant were either (1) void *ab initio*, or (2) have been disaffirmed but not refunded." *See* Dkt. No. 36 at 5. In short, he states that he is entitled to money from his in-game purchases that Defendant has not refunded him. Despite Defendant's urging, Plaintiff need not have requested a refund outside this litigation to have standing to sue. *Accord Reeves v. Niantic, Inc.*, No. 21-CV-05883-VC, 2022 WL 1769119, at *1 (N.D. Cal. May 31, 2022) (citing *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1035–36 (N.D. Cal. 2020)). To the extent Defendant suggests that Plaintiff received a benefit from using the gems and therefore cannot establish an injury, that is not alleged one way or the other in the complaint, and in any event the Court need not resolve that factual dispute at this stage in the case. Plaintiff has pled enough to establish an economic injury, and the Court **DENIES** the motion on this basis.

### iii. Injunctive Relief

Defendant also argues that Plaintiff lacks standing to seek injunctive relief. Dkt. No. 17 at 8. To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). So once a plaintiff has been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quotation omitted). In the context of false advertising cases, the Ninth Circuit has confirmed "that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). A plaintiff may establish the risk of future harm in two ways: (1) "the consumer's plausible allegations that [they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to"; or (2) "the consumer's plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but

5

1    incorrectly, assume the product was improved." *Id.* at 969–70.

2    Here, Plaintiff alleges that he "no longer plays the Games and will not play the Games in
3    the future." Compl. at ¶ 9. Plaintiff nevertheless argues in opposition that he may still be harmed
4    by Defendant's ongoing failure to issue him a refund for his prior purchases. Dkt. No. 36 at 9–10.
5    As Plaintiff notes, he "is currently deprived of the refund that he is legally entitled to." *Id.* at 9.
6    But if this were sufficient, then anyone alleging a present injury could also establish standing to
7    seek injunctive relief simply by claiming that the defendant may not comply with their demands.
8    The Court is not aware of—and Plaintiff does not cite—any authority supporting such a broad
9    interpretation of future injury. Although Plaintiff points to *Reeves v. Niantic*, Dkt. No. 36 at 10,
10   the court in that case did not address any challenge to injunctive relief. 2022 WL 1769119, at *1.
11   The only reference to injunctive relief in *Reeves* actually appears to undermine Plaintiff's
12   argument here. The court explained that "[d]eclaratory relief claims, *unlike claims for injunctive*
13   *relief*, need not anticipate a future, imminent harm." *Id.* (emphasis added). Similarly, Plaintiff's
14   reliance on *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1032 (N.D. Cal. 2020), is misplaced
15   because the court did not address the question of standing to seek injunctive relief at all. The
16   Court accordingly **GRANTS** the motion to dismiss on this basis.

### B.    California Unfair Competition Law

18   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus.
19   & Prof. Code § 17200. The three "prongs" of the UCL are independent of each other and may be
20   asserted as separate claims. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th
21   163, 180 (Cal. 1999). The "unlawful" prong of the UCL incorporates other laws and treats
22   violations of those laws as unlawful business practices independently actionable under state law.
23   *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (Cal. Ct. App. 2006). The
24   "unfair" prong treats as actionable conduct that "violates established public policy or . . . is
25   immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs
26   its benefits." *Id.* at 1473. Here, Defendant contends that Plaintiff cannot state a claim under any
27   of the three prongs. Dkt. No. 27 at 8–17. Plaintiff states that he "concedes his claims under the
28   UCL's 'fraudulent' prong." Dkt. No. 36 at 8, n.2. The Court therefore **GRANTS** the motion to

dismiss on this basis and only considers the unlawful and unfair prongs.

Both Plaintiff's "unlawful" and "unfair" claims turn on the same argument: Plaintiff alleges that Defendant violated specific provisions of the California Family Code by denying him—and all minors—the ability to seek a refund for their in-game purchases. *See* Compl. at ¶¶ 21–22, 28–29, 32–33. Plaintiff argues that his in-game purchases are void under Cal. Fam. Code § 6701 and voidable under Cal. Fam. Code § 6710. Plaintiff points out that although Defendant knew about these statutory provisions, the Terms of Service misled him and putative class members by explicitly stating that all purchases are final and non-refundable. *See id.* at ¶¶ 19, 21–22, 79–81, 91. The parties disagree about the application of §§ 6701 and 6710. Defendant argues that Plaintiff misconstrues these provisions, making his allegations that Defendant violated them implausible. *See* Dkt. No. 27 at 10–14.

### i.     Section 6701

*First*, Plaintiff alleges that his in-game purchases are void under California Family Code § 6701. *See* Compl. at ¶¶ 23–28, 61–65, 73–74. Section 6701 provides that a minor cannot "[m]ake a contract relating to any personal property not in the immediate possession or control of the minor." Cal. Fam. Code § 6701(c). Plaintiff contends that his in-game purchases were never in his "immediate possession or control" because Defendant explicitly maintains control over all virtual items in the games. *See* Compl. at ¶¶ 23, 25. Specifically, the Terms of Service state that "Supercell may manage, regulate, *control*, modify or *eliminate* Virtual Items at any time, with or without notice." *Id.* (emphasis added). The terms also state that "you agree that you have no right or title in or to any content that appears in the Service, including without limitation the virtual items, content, features, goods, services or currency appearing or originating in any Supercell game, whether earned in a game or purchased from Supercell . . . ." *Id.* at ¶ 25.

Defendant argues that Plaintiff's in-game purchases are not "personal property" because they do not give Plaintiff ownership rights over any items, but only a contractual "right to use" them in the games. *See* Dkt. No. 27 at 10–11. Defendant compares them to movie tickets because "gems in Supercell's games are consumable items that merely allow a player to obtain entertainment in Supercell's games." *Id.* at 11. Defendant urges that § 6701(c) does not protect

7

1  such intangible property. Defendant also contends that the in-game purchases were within
2  Plaintiff's "immediate possession or control" because Defendant merely had the option under the
3  Terms of Service to control them. *See id.* at 11–12. Critically, however, Defendant's arguments
4  turn on factual questions outside the complaint about the nature of the in-game purchases and the
5  parties' respective control over them. The Court declines the invitation to wade into these factual
6  disputes at this stage in the litigation.

### ii.  Section 6710

*Second*, Plaintiff alleges that he has the right to disaffirm his in-game purchases under California Family Code § 6710. *See* Compl. at ¶¶ 49–50, 52, 72, 74. Defendant appears to acknowledge that Plaintiff has the right to disaffirm at least some of his purchases, and suggests that it is willing to refund Plaintiff's unused gems if he follows a specific process. *See* Dkt. No. 27 at 12–13. But to the extent Plaintiff seeks to disaffirm purchases of items that Plaintiff actually used in the games, Defendants argues that this would be inequitable. *Id.* at 14–15. Again, Defendant's arguments turn on factual questions about the nature of Plaintiff's purchases, which the Court need not decide at this stage. And to the extent Defendant argues that Plaintiff had to seek a refund outside this litigation to state a claim, the Court has already rejected this argument. *See* Section III.A.ii.

\*   \*   \*

The Court finds that Plaintiff has adequately alleged that Defendant's conduct was both unlawful and unfair and accordingly **DENIES** the motion on this basis. *Accord Reeves*, 2022 WL 1769119, at \*1. To be clear, the Court is not definitively concluding that § 6701(c) and/or § 6710 apply to the circumstances of this case. Rather, the specific arguments that Defendant raises in its motion to dismiss appear to rest on factual assumptions outside the scope of the complaint. As such, the Court finds that they are better addressed on a more fulsome record at summary judgment. For purposes of this order, the Court limits its inquiry to the allegations in the complaint and finds that Plaintiff has done enough to allege plausible claims under the UCL. Whether those claims have substantive merit is for a later day.

//

### C.  Restitution or Unjust Enrichment

Lastly, Defendant urges that Plaintiff's claim for restitution or unjust enrichment should be dismissed because he "has not asserted any claim based on contract," and unjust enrichment is a quasi-contract claim. *See* Dkt. No. 17 at 17.  The Ninth Circuit has explained that restitution and unjust enrichment "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotation omitted).  Although "there is not a standalone cause of action for unjust enrichment" under California law, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (quotations omitted).  "[A] plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  In *Astiana*, the Court found that it was sufficient to state a quasi-contract claim where the plaintiffs alleged that the defendant had "enticed plaintiffs to purchase their products through false and misleading labeling, and that [the defendant] was unjustly enriched as a result." *Astiana*, 783 F.3d at 762 (quotations omitted).

Here, Plaintiff alleges that Defendant was unjustly enriched through its policy of not offering refunds for in-game purchases to minors, and he seeks to recover all revenue acquired from purchases as a result of this policy. *See* Compl. at ¶¶ 88–93.  He further contends that Defendant knew that under California law minors could disaffirm contracts, but nevertheless "misle[d] or misrepresent[ed] the applicable law for transactions with minor[s]" regarding in-game purchases. *See id.* at ¶ 19.  Specifically, the Terms of Service state that all purchases are final and non-refundable. *See id.* at ¶ 22.  Plaintiff thus alleges that Defendant was able to retain Plaintiff's money from these purchases by misleading Plaintiff into believing that they were non-refundable, even for minors.  The Court finds that these allegations are sufficient at this stage and **DENIES** the motion on this basis.

### IV.  CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to

9

dismiss.[1]  The Court **GRANTS** the motion as to Plaintiff's claim under the UCL's fraudulent prong and **GRANTS** the motion as to Plaintiff's request for injunctive relief, but otherwise **DENIES** the motion.  Plaintiff may file an amended complaint within 21 days of the date of this order.

The Court further **SETS** a telephonic case management conference on May 9, 2023, at 2:00 p.m.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The Court further **DIRECTS** the parties to meet and confer and submit a revised joint case management statement by May 2, 2023.  The parties should be prepared to discuss how to move this case forward efficiently.  Given the nature of the parties' contentions, the Court is specifically interested in discussing whether an early motion for summary judgment would be appropriate.

**IT IS SO ORDERED.**

Dated:  3/17/2023

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[1] The parties' requests for judicial notice are denied as moot because the Court did not rely on any of the attached documents.